HARRISON S. BARNES, petitioner-appellant,

*v.*

BERTHA MARIE BARNES, defendant-respondent.

[Submitted May term, 1946. · Decided September 13th, 1946.]

*Mr. Harvey Rothberg,* for the petitioner-appellant.

*Mr. Joseph J. Mutnick,* for the defendant-respondent.

The opinion of the court was delivered by

WELLS, J.

This is the husband's suit for the annulment of a marriage. In his petition filed July 10th, 1945, he states that he was lawfully married to the defendant on April 8th, 1945, by a minister of the gospel, at Trenton, New Jersey. The petition alleges that:

"At the time of the performance of the marriage, defendant was afflicted with a disease or ailment known as psycho-neurosis and, knowing herself to be so afflicted, fraudulently and falsely failed and neglected to inform petitioner of her true condition prior to said ceremony of marriage. Petitioner

was ignorant thereof, and believed defendant to be in good health. Petitioner would not have entered into said marriage had he known of the defendant's true physical and mental condition as aforesaid. * * * Her failure and neglect to make such disclosure to petitioner was fraudulently intended by her to induce him, and did in fact induce him, to marry her, in ignorance of said affliction. Petitioner did not ascertain the true nature of defendant's disease until on or about the 2d day of June, 1945, and thereupon he immediately separated himself from defendant, and has not since that time ratified or confirmed said marriage. * * *"

The petition further alleges that:

"Prior to his marriage to defendant, defendant stated to petitioner that, if petitioner would marry defendant, she would change her religion from that of her previous religion, namely Roman Catholic, to that of the petitioner, namely Presbyterian, * * *. Petitioner, relying upon the truth of the statements made by defendant prior to the marriage ceremony, married her, he being ignorant of the fact that defendant never intended to carry out her promise, as a result of which petitioner was deceived in entering upon said marriage. * * * Defendant refused to perform said promise, although often requested to do so."

The prayer of the petition is "that said marriage between him and defendant may be adjudged and decreed to be null and void for the cause aforesaid, and that he may have such further relief as may be just."

The answer of the wife denies all of the material allegations in the husband's petition for annulment and sets up a counter-claim for separate maintenance, stating that from the date of their marriage they had cohabited with each other until on or about June 2d, 1945, at which time he had abandoned her and refused and neglected, and still refuses and neglects to maintain and provide for her contrary to the statute, in such case made and provided, and states that she is in poor health, utterly destitute, dependent upon the charity of relatives for her support and asks that he be ordered to provide suitable support and maintenance and counsel fees and suit money.

The husband filed an answer to the counter-claim denying that he had ever abandoned his wife or that he ever refused or neglected to support her or that she was destitute.

The wife then filed a petition for alimony *pendente lite* and counsel fee, fortified by affidavits.

Upon the hearing of the application before the advisory master, the husband presented affidavits in support of his answer to the wife's counter-claim and asserting that he had not abandoned her but that she had left him voluntarily and refused to return to him, and that he had adequately made provisions for her support by continuing charge accounts in her name, by paying rent for their apartment, and by various other means.

The learned advisory master advised an order (which is the order appealed from) that the husband pay the wife $25 per week maintenance *pendente lite* and a counsel fee of $250. The advisory master, who filed no opinion, expressed his views in a letter dated October 23d, 1945, addressed to counsel of the respective parties, wherein he stated that "until and unless the husband is able to prove at final hearing his alleged cause of action, he is in the legal situation of having abandoned his wife and of having failed to make further provision for her."

We think this statement, referring, as of course it does, to the husband's suit for annulment, correctly depicts the predicament in which the husband has placed himself. His counsel now seeks to extricate him by assuming that the only cause of action pending is the wife's counter-claim for separate maintenance, and cites *Acheson* v. *Acheson, 124 N. J. Eq. 12; Shaffer* v. *Shaffer, 129 N. J. Eq. 42,* and other separate maintenance cases, to the effect that under the law respecting suits for separate maintenance a wife must show (a) abandonment, or (b) separation without justifiable cause, or (c) refusal or neglect of the husband to maintain and provide for her; and that under the cases these facts must be clearly apparent before the wife is entitled to any support or counsel fee, and contends that the affidavits of the wife here do not meet these requirements.

Counsel for the husband ignores the fact that the main

suit was instituted by the husband and was for the annulment of the marriage. It does not appear, nor is it claimed that the annulment suit has been withdrawn by the husband or dismissed by the court.

The power of the Court of Chancery to make appropriate orders for alimony *pendente lite* in suits for nullity is settled by *R. S. 2:50–37*, the pertinent portion of which is as follows:

"Pending a suit for divorce or nullity, \* \* \* the Court of Chancery may make such order touching the alimony of the wife, \* \* \* as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, \* \* \*."

As to the propriety of allowance of counsel fees *pendente lite*, this court, in *Shaffer* v. *Shaffer, 129 N. J. Eq. 42* (at *p. 44*), said:

"Counsel fees may be awarded pending final hearing and after final decree. The theory of allowing counsel fee *pendente lite* is for the purpose of protecting or defending the wife's marital rights. The wife is a privileged suitor in divorce cases and generally is entitled to alimony and counsel fees *pendente lite*. *Suydam* v. *Suydam, 79 N. J. Eq. 144*. But there is no provision of statute authorizing counsel fees *pendente lite* in matrimonial actions; such allowance is a necessary incident of the alimony allowed the wife on a preliminary application. It is often referred to by earlier texts as 'suit money.' ".

The late Chancellor Walker, then Vice-Chancellor, said in *Suydam* v. *Suydam, supra*, that he thought it was universally conceded that where the husband sues the wife for divorce (and we think the same rule applies to this annulment suit), she is entitled to alimony and counsel fee *pendente lite* if she denies under oath in good faith the matrimonial offense charged against her, and is without means for her support or for defending her husband's suit. The Vice-Chancellor went on to say that the rule is different in cases of alimony dissociated from divorce *a vinculo*, citing *Vandegrift* v. *Vandegrift, 30 N. J. Eq. 76, 77*.

In the case at bar, the allegations of the petition for nullity filed by the husband and his answering affidavits to the

counter-claim have been fully met by the wife in her answer and affidavits, and her need of support and suit money, and his ability to pay the amounts allowed are fully evidenced.

He admits the marriage *de facto* and does not deny that it was consummated. The fact that he comes before the court now denying the validity of the marriage and in this proceeding seeks to annul it, is not of itself enough to relieve him from the support of the wife *pendente lite, Vroom* v. *Marsh, 29 N. J. Eq. 15.*

After a careful consideration of the pleadings, the proofs and the briefs of counsel, we have reached the conclusion that the advisory master used sound discretion in his allowance of the alimony *pendente lite* and counsel fee to the wife in the instant case.

The decree of the Court of Chancery is, therefore, affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, COLIE, OLIPHANT, WACHENFELD, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, McLEAN, JJ. 15.

*For reversal*—None.